UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: THE FOLLOWING PETITIONS FOR JUDICIAL REVIEW VERSUS MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION: | ) ) ) ) ) ) ) ) | Civil Action Nos: |
| ROBERT M. PARO | ) ) | 10-30119-KPN |
| SHERRY MICHON | ) ) | 10-30152-KPN |
| CHRISTOPHER ZINGLE | ) ) | 10-30166-KPN |
| JACK STIMPSON | ) ) | 10-30193-KPN |
| LAWRENCE CREVIER | ) ) | 10-30195-KPN |
| PATRICIA ANN MALEJKA | ) ) | 10-30205-KPN |
| GLADYS RIVERA | ) ) | 10-30217-KPN |
| MAYRA ALTAMIRANO | ) ) | 10-30231-KPN |
| RICHARD M. CALHOUN | ) ) | 10-30239-KPN |
| JANE IRENE BARR | ) ) | 11-30031-KPN |
| LYNN ANN POPOVICH | ) ) | 11-30043-KPN |
| ALBERTO GONZALEZ | ) ) | 11-30046-KPN |
| OSCAR ARZOLA | ) ) | 11-30057-KPN |
| WILMALIZ HUERTAS | ) ) | 11-30064-KPN |
| JUAN CARLOS PEREZ | ) ) | 11-30074-KPN |
| MARGARET ANN DROLLETT | ) ) | 11-30075-KPN |
| BOZENA C. GIERYK | ) | 11-30077-KPN |

| | | |
|---|---|---|
| LUIS A. SANTIAGO, SR. | ) | 11-30080-KPN |
| | ) | |
| HEATHER MARIE GREENE | ) | 11-30084-KPN |
| | ) | |
| HECTOR L. REYES | ) | 11-30086-KPN |
| | ) | |
| ERIN L. HEMINGWAY | ) | 11-30096-KPN |
| | ) | |
| SUZANNE WOOD | ) | 11-30098-KPN |
| | ) | |
| MAUREEN O'GORMAN | ) | 11-30104-KPN |
| | ) | |
| DANIEL W. TUCKER | ) | 11-30115-KPN |
| | ) | |
| L.I.D. by her mother, LUZ IVETTE VAZQUEZ | ) | 11-30132-KPN |
| | ) | |
| ROBERT EDWARD SMITH | ) | 11-30143-KPN |
| | ) | |
| LENORA A. BROWN | ) | 11-30144-KPN |

MEMORANDUM AND ORDER TO SHOW CAUSE
May 31, 2011
NEIMAN U.S.M.J.

The court this day, in yet another appeal of a decision by the Commissioner of the Social Security Administration denying disability benefits under the Social Security Disability Insurance ("SSDI") and/or the Supplemental Security Income ("SSI") programs, has remanded the matter for a new hearing before an administrative law judge. *See Cotley v. Astrue*, Civil Action No. 10-30085-KPN. In doing so, the court noted that the case would have been well-served had it been reviewed first by the Decision Review Board ("DRB"), which had the authority to review the decision of the administrative law judge. Instead, the DRB, as has been all too common, simply let the ninety day review period expire, thereby permitting Mr. Cotley to appeal the administrative law judge's denial of his benefits to this court. That failure on the part of

2

the DRB has caused this court to consider whether some, if not all, of the other pending cases before it in which claimants are similarly situated, all of whom are named in the caption above, should be remanded for further administrative appellate review. For the reasons which follow, the court has decided to have the Commissioner show cause why such remands would not be appropriate.

I. S<small>TANDARD</small> A<small>DMINISTRATIVE</small> A<small>DJUDICATIVE</small> P<small>ROCESS</small>

Under the standard system for adjudicating disability claims, a claimant who is denied SSI or SSDI disability benefits can request a reconsideration. This process involves a review of the claimant's file, usually without his or her presence. If still denied, the claimant can ask for a hearing in front of an administrative law judge. After the hearing, the judge will issue a decision, and the claimant will receive a letter and copy of the decision. The claimant, if still dissatisfied, can ask for a review by the Social Security Administration's Appeals Council. The Appeals Council can deny review of the case, decide the case itself, or remand for further review. The Appeals Council will review cases if the administrative law judge appears to have abused his or her discretion, if there was an error of law, if the decision was not supported by substantial evidence, or if there is a broad policy or procedural issue that may affect the public interest; the Appeals Council may also review a case because it received new and material evidence and the decision is contrary to the weight of all the evidence in the record. If the Appeals Council rules adversely, the claimant may file suit in federal court.

II. R<small>EGION</small> I D<small>ECISION</small> R<small>EVIEW</small> B<small>OARD</small>

Effective August 1, 2006, a new administrative review process was introduced in

3

Region I of the Social Security Administration (including Massachusetts, Connecticut, Maine, New Hampshire, Rhode Island, and Vermont) with the ostensible goal of improving the accuracy, consistency, and timeliness of decision-making throughout the disability determination process. *See* 20 C.F.R. § 405.420; The Administrative Review Process for Adjudicating Initial Disability Claims, 71 Fed. Reg. 16424 (March 31, 2006). The new process arose as a result of the significant growth in the number of disability beneficiaries in the country.[1] Region I was to be a testing ground for a gradual roll-out across the country. As described below, one of the main reasons for its gradual implementation was a concern about the possible increase in the number of cases that would be appealed to the federal courts.

The new system, labeled the Disability Service Improvement (hereinafter "DSI") process, contained some significant changes to the standard administrative review process described above, primarily the eventual elimination of the Appeals Council (save for reviews of administrative law judges' decisions that involved non-disability claims and issues) and the creation of the DRB. *See* 20 C.F.R. §§ 405.401-450. The DRB was to be comprised of administrative law judges and administrative appeal judges appointed by the Commissioner of Social Security.[2]

---

[1] "In January 2005, nearly eight million disabled workers and their dependents received [disability] benefits, double the number of beneficiaries in 1985," and "[n]early six million disabled adults and children received SSI disability payments, more than double the number in 1985." 71 Fed. Reg. at 16424. Also, in 2005, Social Security Administration administrative law judges processed approximately 500,000 hearings. *Id.*

[2] Other changes included implementing a new electronic disability system, establishing a new, integrated, and more comprehensive quality system, enhancing management information, updating medical and vocational policy, strengthening the

The DRB's standard of review reflected that of the Appeals Council, namely, the application of a substantial evidence standard to questions of fact. A major difference between the DRB and the Appeals Council, however, was a claimant's inability to appeal an administrative law judge's decision to the DRB, as could be done with the Appeals Council. Rather, the DRB itself was to have the discretion to select a claim for review. If a claim was selected, the claimant was to be notified at the same time he or she received the administrative law judge's decision. Although the manner of selection was not made clear by the implementing regulations, the DRB was authorized to review both allowances and denials. In any event, the claimant was to be told that, if the DRB did not act within ninety days, the decision of the administrative law judge would become final. If the DRB itself issued a decision, however, that would become the final decision of the Commissioner. The notice from the DRB would also instruct a claimant, if dissatisfied, how to seek judicial review.

III. EFFECT ON THE DISTRICT OF MASSACHUSETTS

Since the implementation of this DRB system, the number of appeals filed in the Western Division of the District of Massachusetts has increased dramatically. In calendar year 2007, there were approximately seventeen Social Security cases (with code 863 or 864 on the civil cover sheet); this compares to twenty in the previous calendar year. This total increased to twenty-three in 2008, to forty-nine in 2009, and to seventy-two in 2010. These numbers represent an increase of such cases as a percentage of all civil cases filed in this division from 8% in 2007, to 10% in 2008, to

---

ability to address policy issues, and implementing new work opportunity initiatives. 71 Fed. Reg. at 16424.

20% in 2009, and to 28% in 2010.  This trend has gone unabated in the current calendar year as well.

The situation in the Western Division has been particularly acute when compared to the other two divisions in this District.  While the yearly number of comparable cases has also increased in both the Eastern and Central Divisions from 2007 through 2010 (from 48 to 79 in the Eastern Division and from 11 to 18 in the Central Division), the percentage of civil filings represented by such disability cases in these two divisions during this same time period -- increasing from 2% to 7% in the Eastern Division and from 3% to 11% in the Central Division -- comes nowhere near the percentage increase in the Western Division.[3]

The cause of this significant growth in Social Security disability filings is unclear.  A recent news article in the Washington Post suggested that claims for disability benefits had grown in recent years as "the result of baby boomer retirements and high unemployment," noting that the Social Security Administration had received 10 million new claims in 2009, up from 8.2 million in 2004.  *See* Lisa Rein, *Claims for Social Security Benefits on the Rise*, WASHINGTON POST, March 28, 2011, *available at* http://www.washingtonpost.com/politics/claims-for-social-security-benefits-on-the-rise/2011/03/28/AFTPNgrB_story.html (last visited May 27, 2011).  And, of course, there may be other factors which have affected the Western Division in particular, *e.g.*, the nature and skills of the Social Security bar and the "reversal rate" of administrative law judges

---

[3] The court acknowledges and appreciates the role of the Commissioner in deciding after his own review, through counsel, that a number of cases filed in this Division should be remanded without further intervention by the court.

situated in this division, *i.e.*, the percentage of appeals approved by an administrative law judge.  *See* THE NEWS JOURNAL, *Shut Out of Social Security*, *available at* http://php.delawareonline.com/federal/alj.php (last visited May 27, 2011).  Yet whatever other factors may be at play, there is little doubt that the new DRB process has played a significant and, in the court's view, troubling role.

The evident purpose of the DRB plan was to give claimants a "final decision" much sooner than was previously the case and, thereby, speed up the administrative process.  In this vein, the Washington Post article cited above noted that by August 9, 2008, an administrative appeal took an average of 532 days to resolve but, with the hiring of new administrative law judges and support staff, the process had sped up, reducing the time to 390 days.  What has actually happened, however, is that many more cases, often with less merit, are being filed in this court; thus, even though "selected" for review by the DRB, practically all of the cases presently before this court have *not* been reviewed by the DRB.  Of the thirty-one cases presently pending before the undersigned (some of which are also awaiting consents or declinations pursuant to 28 U.S.C. § 636(c)), only one, for some reason, appears to be an appeal from the Appeals Council.  (*See* Civil Action No. 10-30097-KPN.)  Of the thirty cases arising out of the DRB process, three (Civil Action Nos. 11-30007-KPN, 11-30021-KPN, and 11-3041-KPN) appear to reflect specific affirmations by the DRB of the administrative law judges' decisions.  The remaining twenty-seven cases, all of which are subject to this order, appear to have arrived at this forum after the DRB failed to act within its ninety-day review period, although this particular process can not yet be confirmed with regard

to some of the more recently filed cases.[4]

In short, most of the claimants with cases presently pending before this court are routinely receiving notices which simply say that "[t]he Decision Review Board did not complete its review of your claim during the time allowed" and "[t]herefore, the Administrative Law Judge's decision has become the final decision of the Social Security Administration." In contrast, a claimant who appeals, unsuccessfully, to the Appeals Council at least has the appeal acknowledged, even if found to lack merit. Absent such a finding by the DRB, claimants, in the court's opinion, often have little choice but to seek at least one further appeal.

## IV. RECOGNITION OF THE PROBLEM

It was not as if the problem of increased filings in the federal courts was not predicted or unknown to the Social Security Administration. At the time it published the DRB regulations in 2006, the Social Security Administration recognized "that there are many who are deeply concerned that elimination of the Appeals Council and the right to appeal, which we provide in this rule, may have a debilitating effect on claimants and result in an increased burden on the federal courts." 71 Fed. Reg. at 16438. The Social Security Administration also noted at the time that, "[a]lthough some commentators agreed that the Appeals Council should be eliminated, many opposed the proposal, believing that the Appeals Council provides a reasoned, timely, and consistent response

---

[4] As best this court can determine, the thirty-nine presently pending Social Security and SSI cases before District Judge Michael A. Ponsor show a similar pattern. Only two appear to be appeals from the Appeals Council itself. Of the remaining thirty-seven arising out of the DRB process, all but six appear to have been filed after the DRB failed to review the case within its ninety-day review period.

to claimants and intercepts a large number of claims that would not withstand district court review." *Id.* "Still other commentators," the Social Security Administration added, "noted that eliminating the claimant's right to request [administrative] review would increase the likelihood that erroneous administrative law judge decisions would not be reviewed, because the claimant's representative would be unable to alert the DRB to subtle problems with the administrative law judge's decision that may be overlooked in a screening process." *Id.* The Social Security Administration also acknowledged in particular that the Administrative Office of the United States Courts expressed concerns that "the shift of the Appeals Council's functions to the DRB would have an adverse effect on the Federal Court System and would result in an increase in the number of cases appealed to the Federal courts." *Id.* at 16439.[5]

As the growing number of cases filed in this District indicates, the concerns voiced by the Administrative Office of the United States Court and by others have been borne out. In this regard, the September 27, 2005 testimony of District Judge Harold D. McKibben, chair of the Judicial Conference Committee on Federal-State Jurisdiction, before the House Ways and Means Subcommittee on Social Security, was prescient. *See Social Security Disability Determination Process Improvements: Hearing Before the*

---

[5] A law review article published soon after the implementation of the DRB system, although generally supportive, also acknowledged that the change "may result in unnecessary appeals to federal district court, or more distressingly, may lead to many [administrative law judge] decisions not being reviewed at all where the claimant lacks the means to proceed to court." Frank S. Bloch, Jeffrey S. Lubbers & Paul R. Verkuil, *The Social Security Administration's New Disability Adjudication Rules: A Significant and Promising Reform*, 92 CORNELL L. REV. 235, 239 (2007). *See also* Robert E. Rains, *A Response to Bloch, Lubbers & Verkuil's The Social Security Administration's New Disability Adjudication Rules: A Cause for Optimism . . . and Concern*, 92 CORNELL L. REV. 249, 252 (2007).

*Subcomm. on Human Resources and the Subcomm. on Social Security of the H. Comm. on Ways and Means*, 109th Cong., 2005 WL 2376204 (F.D.C.H.) (2005) (statement of Hon. Howard D. McKibben, Chair, Judicial Conf. Comm.), Judge McKibben testified that the elimination of the Appeals Council and the creation of the Decision Review Board might actually result "in more costs and further delays for claimants because it merely shifts the time for considering such claims from the administrative process to the courts" and "could also greatly expand the number of appeals to the federal courts." *Id.* In addition, relying on information provided by the Social Security Administration itself (concerning the number of requests for review by the Appeals Council, together with percentages of outright reversals and remands without the need for further review by the federal courts), Judge McKibben testified that "the Appeals Council appears to provide a helpful screening function." *Id.* "While the judiciary recognizes that several factors might explain why the remainder of the claimants choose not to seek review in federal court," Judge McKibben continued, "the existence of a right to seek administrative appellate review appears to result in a large majority of claimants not seeking judicial review following receipt of the Appeals Council final decision." *Id.* In short, it is one thing for an administrative body (in the form of the Appeals Council) to rule on the merits; it is quite another for an administrative body (in the form of the DRB) to do nothing other than pass on further review to the federal courts.

Despite the various concerns voiced by Judge McKibben and others, the Social Security Administration predicted that the DRB would "perform more effectively than the Appeals Council and provide better relief for claimants, in that we can identify the most

10

error-prone claims." 71 Fed. Reg. at 16438. Even more expansively, the Social Security Administration posited that "[n]either the Social Security Act nor due process requires further opportunities for administrative review" beyond the administrative law judge level. *Id.* Nonetheless, the Social Security Administration decided to implement a "gradual rollout to minimize the impact on the judiciary." *Id.* It also chose to begin the new process in Region I, which it described as "one of the smallest regions." *Id.* Finally, the Social Security Administration promised that the DRB would "monitor administrative law judge decisions in order to identify trends or developments that we need to address." *Id.* at 16440.

V. <u>ELIMINATION OF THE DRB</u>

The Social Security Administration's confidence in the DRB process appears to have quickly faded. In late 2008, as a matter of "major importance," it proposed the elimination of the DRB portion of its previously enacted regulations. *See* Regulatory Practices as part of its Regulatory Plan, 73 Fed. Reg. 71280, 71285 (November 24, 2008). However, it was not until a year later, that it published a notice of proposed rules eliminating the DSI process and returning Region I to the rules used to adjudicate disability claims in the rest of the country. *See* Reestablishing Uniform National Disability Adjudication Provisions, 74 Fed. Reg. 63688 (December 4, 2009). It took nearly another year and a half for the Social Security Administration to publish final rules eliminating the DRB effective June 13, 2011. *See* 76 Fed. Reg. 24802 (May 3, 2011).

The Social Security Administration explained this recent change as follows:

[t]he DRB has not functioned as we originally intended; its

11

> workload has grown quickly and become overwhelming. We
> had intended to use an automatic predictive model to select the
> most error-prone cases for DRB review. However, because we
> were unable to implement this prediction model, the DRB
> processed 100% of the unfavorable and partially favorable
> decisions, requiring significantly more resources than we had
> anticipated.

*Id.* at 24803.  It is not entirely clear what is meant by the assertion that the DRB "processed" 100% of the unfavorable and partially favorable decisions of administrative law judges; the fact that the DRB, as described, appears to have let the ninety-day review period expire in the vast majority of cases hardly amounts to any "process" whatsoever.  In any event, the new regulations provide that the Social Security Administration intends to "transfer all cases pending before the DRB to the Appeals Council" and treat those cases as if the claimants had requested Appeals Council review of the hearing decision.  *Id.*  Moreover, in order to allay concerns about longer processing times at the Appeals Council, the Social Security Administration agreed to "put the transferred cases at the front of the Appeals Council queue."  *Id.* at 24804.  These regulatory changes will likely be welcomed by claimants whose cases are presently subject to DRB review.

## VI. EXHAUSTION OF REMEDIES AND JUDICIAL ECONOMY

The recent regulatory changes, however, do not assist the scores of cases filed in this court with inadequate DRB review in the two and one-half years since the Social Security Administration decided that the DRB should be eliminated.  The DRB appears to have been a mere chimera of procedural fairness, a poor substitute for the Appeals Council, and a plan fatal in its design in that it all but eliminated the ability of the Social Security Administration to properly review cases.  As a result, in the court's view, the

DRB process is the primary reason for the significantly increased volume of SSDI and SSI disability cases filed here in the last several years and presently pending.

The problems created by the failure of the DRB to provide adequate review stands at the crossroads of the doctrines of exhaustion of remedies and judicial economy. As then Circuit Judge Stephen Breyer explained in *Ezratty v. Commonwealth of Puerto Rico*, the exhaustion doctrine serves important interests:

> It allows the agency to develop a factual record, to apply its expertise to a problem, to exercise its discretion, and to correct its own mistakes, all before a court will intervene. Insofar as specialized administrative understanding is important, the doctrine thereby promotes accurate results, not only at the agency level, but also by allowing more informed judicial review. By limiting judicial interruption of agency proceedings, the doctrine can encourage expeditious decision making. Insofar as Congress has provided that an agency will decide a matter in the first instance, to apply the doctrine normally furthers specific Congressional intent. And, as a general matter, the doctrine promotes a sensible division of tasks between the agency and the court: litigants are discouraged from weakening the position of the agency by flouting its processes, while court resources are reserved for dealing primarily with those matters which could not be resolved administratively. Thus, the doctrine serves interests of accuracy, efficiency, agency autonomy and judicial economy.

648 F.2d 770, 774-75 (1st Cir. 1981) (citing K. DAVIS, ADMINISTRATIVE LAW TREATISE § 20.01 et seq. (1958 ed. & Supp. 1965 & Administrative Law of the Seventies); LOUIS L. JAFFE, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION 424-458 (1965); Fuchs, *Prerequisites to Judicial Review of Administrative Agency Action*, 51 IND. L. J. 819, 859-69 (1976)).

To be sure, *Ezratty* concerned the Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1401 *et. seq.*, not the SSDI and SSI disability programs under the

Social Security Act. *Ezratty*, however, did involve an agency, the Puerto Rico Department of Education, which itself "prevented administrative remedies from being exhausted." *Ezratty*, 648 F.2d at 775. That appears to be the situation here as well. In particular, the agency in *Ezratty* had refused plaintiffs' request for further agency action and had "provide[d] no justification for refusing plaintiffs the procedures to which the statute and regulations entitled them." *Id.* In such circumstances, Judge Breyer indicated, the court would normally "refuse to return the case to the agency. To send the case back," he continued, "would seem unfair to the plaintiffs and might seem to condone the agency's violations of the law's procedural requirements." *Id.* Nevertheless, the court upheld the trial court's dismissal of the case because, presumably, the agency was prepared to make the administrative remedies available to the plaintiffs. *Id.*

There are features of the *Ezratty* case which are distinguishable from the cases at bar. Nonetheless, Judge Breyer's analysis provides important guidance. First, exhaustion is not merely the responsibility of a claimant; an administrative agency has an equally important obligation to ensure that procedural remedies are indeed made available to exhaust. Here, for the reasons described, the court is not convinced that the Social Security Administration fulfilled its appellate administrative obligations. Second, *Ezratty* speaks to the division of tasks between administrative agencies and the courts; only where agencies properly fulfill their functions can courts best resolve any lingering disputes. Here, too, the court believes that the federal courts have had their judicial role compromised by the Social Security Administration's failure to ensure that an administrative appellate panel was available to properly screen cases. Finally,

14

*Ezratty* is important to the extent it demonstrates how an administrative agency can remedy its mistakes in individual cases by according proper administrative processes. *See also Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 79 (1st Cir. 1997) ("[i]nsisting on exhaustion forces parties to take administrative proceedings seriously, allows administrative agencies an opportunity to correct their own errors, and potentially avoids the need for judicial involvement altogether.").

CONCLUSION

The Commissioner is hereby ORDERED to show cause in writing by June 21, 2011, why some if not all of the cases subject to this order should not be remanded for further review by the Appeals Council so as to accord these claimants the administrative appellate review they would have received had the DRB process been successfully implemented. The attorneys representing the identified claimants shall, in turn, set forth in writing their individual views with regard to this show cause order no later than June 28, 2011. A hearing on this matter shall take place on July 7, 2011, at 2:00 p.m.

IT IS SO ORDERED.

DATED: May 31, 2011

   /s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge