UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT M. PARO, JR., ) | | |
| Plaintiff ) | | |
| ) | | |
| ) | | |
| v. ) | Civil Action No. 10-30119-KPN | |
| ) | | |
| ) | | |
| MICHAEL J. ASTRUE, ) | | |
| Commissioner of Social ) | | |
| Security Administration, ) | | |
| Defendant ) | | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS and DEFENDANT'S MOTION
TO AFFIRM THE DECISION OF THE COMMISSIONER (Document Nos. 11 and 13)
September 7, 2011

NEIMAN, U.S.M.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") pursuant to 42 U.S.C. §§ 405(g) and 1381(c)(3). Robert Paro Jr. ("Plaintiff") asserts that the Commissioner's decision denying him such benefits -- memorialized in a January 4, 2010 decision of an administrative law judge -- is not supported by substantial evidence. Plaintiff has filed a motion for judgment on the pleadings and the Commissioner, in turn, has moved to affirm.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c);

Fed. R. Civ. P. 73. For the following reasons, the court will allow Defendant's motion to affirm and deny Plaintiff's motion for judgment on the pleadings.

I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Secretary of Health & Human Services*, 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. *See Rodriguez*, 647 F.2d at 222; *Evangelista v. Secretary of Health & Human Services*, 826 F.2d 136, 141 (1st Cir. 1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing."

2

42 U.S.C. § 405(g).

## II. B<span style="font-variant:small-caps">ACKGROUND</span>

On June 27, 2007, Plaintiff filed for both SSDI and SSI benefits, alleging a disability onset date of June 7, 2007. (Administrative Record ("A.R") at 33.) At the time, Plaintiff claimed that he was disabled due to slowness, learning disabilities, attention deficit and hyperactivity disorder ("ADHD"), and seizures. (A.R. at 96, 381-84.) After Plaintiff's claim was denied both initially and upon reconsideration, he requested a hearing in front of an administrative law judge (hereinafter "ALJ"), which hearing occurred on December 11, 2009. (A.R. at 47.)

Plaintiff, twenty-six years old at the time of the hearing, testified that he had a twelfth grade education, briefly attended a trade school, and could read at about a fifth grade level. (A.R. at 378, 381.) Plaintiff's past work experience includes work as a cashier at a retail store, packaging, selector, meat clerk, and cafeteria cook. (A.R. at 378-79, 401-402.) In addition, at the time of the hearing, Plaintiff had been working part time as a cashier for approximately five months. (A.R. at 379.) Plaintiff's mother testified at the hearing that Plaintiff had been terminated from an earlier job at a meat packaging plant because he was too slow. (A.R. at 391.) Plaintiff indicated that he takes Depakote every day to control seizures and that he had not had a seizure since starting the medication in 2001. (A.R. at 163, 380.)

At the hearing, a vocational expert testified in response to a hypothetical which included Plaintiff's age, education and work experience, limitations to unskilled work, avoidance of hazardous machinery, the ability to remember, carry out and complete

simple instructions, and the ability to concentrate and maintain attention for at least a two-hour time period. (A.R. at 402-404.) The vocational expert explained that such an individual could perform Plaintiff's past work as a cashier, selector, meat clerk, and cafeteria cook. (A.R. at 404.) The ALJ then posed a second hypothetical with the same limitations posed as in the first but limited to light work. (Id.) In response, the vocational expert testified that such an individual could perform the Plaintiff's past work as a cashier. (Id.) Plaintiff's attorney then posed a final hypothetical whether an individual - - with a marked limitation in understanding, remembering and carrying out detailed instructions, a marked limitation in the ability to make judgments and simple work-related decisions, and to respond appropriately to changes in a routine work setting - - would be employable. (A.R. at 405.) The vocational expert testified that such an individual would not be. (Id.)

In a decision dated January 4, 2010, the ALJ denied Plaintiff's claim. (A.R. at 8-20.) The ALJ found that Plaintiff had not been under a disability within the meaning of the Social Security Act since June 7, 2001. (A.R. at 19.) On April 12, 2012, the Commissioner's Decision Review Board informed Plaintiff that it had taken no action on the ALJ's decision, thereby making that decision final. (A.R. at 5-8.) In due course, Plaintiff filed this civil action, the Commissioner compiled the administrative record, and the parties submitted the cross-motions currently at issue.

### III. DISCUSSION

An individual is entitled to SSDI benefits if, among other things, he has an insured status and, prior to its expiration, is disabled. *See* 42 U.S.C. § 423(a)(1)(A)

4

and (D). Entitlement to SSI, on the other hand, requires a showing of both disability and financial need. See 42 U.S.C. § 1381a. Plaintiff's need, for purposes of SSI, and his insured status, for purposes of SSDI, are not challenged.

A. Disability Standard and the ALJ's Decision

The Social Security Act (the "Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3)(A) (similar). An individual is considered disabled under the Act

> only if his physical and mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). See generally Bowen v. Yuckert, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimant's physical or mental capacity to perform basic work-related functions." If he does not

> have an impairment of at least this degree of severity, he is automatically not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
>
> . . . .
>
> Fourth . . . does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so he is disabled; if not he is not disabled.

*Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, the ALJ found as follows with respect to these questions: Plaintiff has worked since the onset date of his alleged disability but such work is not substantial gainful activity due to its part-time nature and income level (question 1); he has an impairment which is "severe," namely, borderline intellectual functioning, but which does not meet or medically equal one of the listed impairments in Appendix 1 (questions two and three) 20 CFR Part 404, Subpart P; and, he is capable of performing past relevant work as a cashier and packager with a residual functional capacity to perform medium work except avoid exposure to hazardous machinery and limited to unskilled positions (questions 4 and 5). Therefore, the ALJ determined, Plaintiff was not disabled. (A.R. at 41.)

B. Plaintiff's Challenge to the ALJ's Decision

Plaintiff disputes the ALJ's finding in two ways. First, Plaintiff argues that the

ALJ erred by assigning little weight to his treating physician's opinion. Second, Plaintiff asserts that the ALJ's conclusions are based on her personal opinion and are not supported by substantial evidence. In response, the Commissioner asserts that the record supports the ALJ's conclusion.

    1. The Treating Physician's Opinion

The term "treating physician" is defined in the regulations as any physician who "has provided [the claimant] with medical treatment or evaluation and who has or has had an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§404.1502 and 416.902. Pursuant to these regulations, an administrative law judge should consider the relationship "ongoing" when the claimant "see[s] or [has] seen the physician . . . with a frequency consistent with accepted medical practice for the type of treatment and evaluation required for [the claimant's] medical condition(s)." *Id.* Generally speaking, an administrative law judge should give "more weight to the opinions from [the claimant's] treating sources since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Indeed, the an administrative law judge must give "controlling weight" to the opinions of treating physicians when the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

Here, Plaintiff asserts that Dr. John Peluso was Plaintiff's treating physician and that, when assessing Plaintiff's residual functional capacity, the ALJ erred by not giving

7

Dr. Peluso's opinion controlling weight. In response, the Commissioner asserts, in the first instance, that Dr. Peluso cannot properly be considered Plaintiff's treating physician because he did not treat Plaintiff "with a frequency consistent with acceptable medical practice for the type of treatment and/or evaluation required for [Plaintiff's] medical condition(s)." *See* 20 C.F.R. §§ 404.1502, 416.902. Alternatively, the Commissioner argues that, even if Dr. Peluso were considered the treating physician, his opinion should not be entitled to controlling weight because (a) given the nature of the medical treatment he provided to Plaintiff, he is unable to bring the "detailed, longitudinal picture" of Plaintiff's mental impairments and (b) in any event, Dr. Peluso's opinions are not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *See* 20 C.F.R. §§ 404.1527 (d)(2), 416.927 (d)(2). For its part, the court finds the Commissioner's arguments more persuasive.

Plaintiff saw Dr. Peluso, a general practitioner, for the treatment of various physical ailments, including thumb injuries (A.R. at 277, 280), right shoulder pain (A.R. at 337, 339), and a body rash (A.R. at 335-336); he also provided general health counseling, such as recommending exercise and sunscreen use (A.R. at 331-332). With regard to any treatment for Plaintiff's mental health, however, Dr. Peluso's involvement appears to have been minimal. Nonetheless, in August of 2007, Dr. Peluso completed a Mental Deficiency form, in which he recorded information, relayed by Plaintiff, about his mental limitations. (A.R. at 201.) It does not appear, however, that Dr. Peluso himself conducted any tests for purposes of assessing Plaintiff's mental abilities; at best, when answering the question "has intelligence testing been done," Dr.

8

Peluso simply wrote that "Patient believes this was done when he was in high school." (Id.) Similarly, with respect to Plaintiff's ultimate diagnosis, Dr. Peluso only stated that "Patient reports that he has been diagnosed with attention deficit disorder and a learning disability 'LLC' (I do not know what 'LLC' signifies)." (Id.) Granted, later that same year, Dr. Peluso administered a depression screening test, but that showed Plaintiff was not depressed but merely bored. (A.R. at 277-78.)

On April 14, 2009,, Dr. Peluso completed a Medical Source Statement. (A.R. at 362-363.) Dr. Peluso noted therein that Plaintiff's ability to understand, remember, and carry out instructions was affected by his mental ability and that he suffered moderate limitations in his ability to understand and remember short, simple instructions, carry out short, simple instruction, interact appropriately with the public, supervisors and co-workers, and respond appropriately to work pressures in a usual work setting. (Id.) Dr. Peluso's statement, however, appears to be based on his personal observations of Plaintiff while treating him for non-mental health ailments. In fact, Dr. Peluso, in the prior two years, had seen Plaintiff only once and, that, for a routine physical. (A.R. at 351.) Granted, Dr. Peluso also relied on the opinion of Dr. Timothy Whelan, P.H.D., the Director of Baystate Health Neuropsychology Service, who performed a neuropsychological evaluation of Plaintiff in January of 2008 ( A.R. at 362); but, for reasons discussed in the section below, that evaluation hardly helps Plaintiff.

Given all this, the ALJ did not err by refusing to grant controlling weight to Dr. Peluso's opinion. As explained by the First Circuit, the term "treating physician" although "not static," "refers to a physician or psychologist with whom the applicant has

9

an 'ongoing treatment relationship,' as determined by the type, frequency and quality of doctor-patient contact in light of its consistency with accepted medical practice for the particular condition." *Rivera v. Secretary of Health & Human Services*, 986 F.2d 1407, *3 (1st Cir. 1993). Here, it is clear that Dr. Peluso, given his role as Plaintiff's general practitioner, was not his treating physician for purposes of his learning disability. In addition, Dr. Peluso did not himself administer any tests to determine whether Plaintiff had a learning disability and, therefore, has offered an opinion unsupported by appropriate diagnostic techniques. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (physician's opinion is only entitled to "controlling weight" if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques"). Finally, Plaintiff's arguments to the contrary, the limitations included in the ALJ's residual functional capacity finding were not entirely inconsistent with Dr. Peluso's assessment; the ALJ gave some weight to that assessment and limited Plaintiff to "unskilled positions" based on "educational and performance evaluation." (A.R. at 16) In short, the court finds unpersuasive Plaintiff's argument that the ALJ erred by not assigning controlling weight to Dr. Peluso's opinion.

  2. <u>The ALJ's Decision is Supported by Substantial Evidence</u>

Plaintiff also argues that the ALJ's decision is based on her personal opinion and not supported by substantial evidence, pointing in particular to certain comments made by the ALJ about how Plaintiff has been treated by his mother and his physicians. For example, after stating that her finding regarding Plaintiff's residual functional capacity was supported by the record and hearing testimony, the ALJ noted that

> [t]here is a difference between talking at someone's level and talking down to them. The undersigned is of the opinion that a majority of doctors and the claimant's parents have done the latter to him for most of his adult life. It is the opinion of the undersigned that the evidence shows the claimant is able to function quite well within his limitations.

(A.R. at 18-19.) After reviewing the record, the court finds Plaintiff's argument unpersuasive.

As relevant here, the ALJ found that Plaintiff's borderline intellectual functioning was a severe impairment, but found that his central auditory processing disorder was not severe (based on Plaintiff's statement that he does not notice any hearing deficit in his left ear and expert testimony that the test used for Plaintiff's auditory capacity was not an effective measure for an individual his age). (A.R. at 14.) The ALJ also found that Plaintiff's seizure disorder was not a severe impairment given the lack of any seizures since the Plaintiff began taking medication to control them. (Id.) Finally, the ALJ determined that there was insufficient evidence showing Plaintiff currently suffered from ADHD; the ALJ's conclusion was based on the reviewing physician's examination, which noted that Plaintiff had outgrown his ADHD and the lack of any evidence to the contrary. (Id.) As a result, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and that he had the residual functional capacity to perform medium work, avoiding exposure to hazardous machinery and limited to unskilled positions, with the ability to remember, carry out, and complete simple instructions, as well as concentrate and maintain attention for at least two hours, with no limits on adaptability or social interactions. (A.R. at 16.)

That conclusion, the court finds, is consistent with the consultative and state

agency psychologists' assessments of Plaintiff, as well as Plaintiff's own testimony.  For example, Dr. Sanford Bloomberg, after meeting with Plaintiff for a psychiatric evaluation, concluded that "it is difficult ... to say just how disabled [Plaintiff] is but psychiatrically, except for some degree of a learning disability, he is not disabled at all." (A.R. at 216.)  Dr. Bloomberg went on to explain that "[Plaintiff] is now 24 and he has been having some trouble working in recent years because of slowness at work but it is difficult for me to say just how disabled he is and I would think that with certain jobs such as the one he held for three years that he would be able to work." (Id.)  These findings are appropriately reflected in the ALJ's decision.

The ALJ's decision is also supported by the assessment of Dr. Whelan, who performed a neuropsychological evaluation of Plaintiff on January 11, 2008.  As noted, Dr. Peluso, Plaintiff's general practitioner, relied in part on Dr. Whelan's findings when completing a Medical Source Statement.  Dr. Whelan concluded that Plaintiff's adaptive abilities were in the "borderline to low average ranges" and that his "'executive' capacities seem largely intact." (A.R. at 240.)  He went on to explain that "there is ongoing evidence of academic disability, with fundamental skills in reading and math that are at a late elementary grade level." (A.R. at 241.)  Dr. Whelan's recommendations for Plaintiff, however, were job training, supportive counseling to maintain self-competence, and the possibility of reapplying for disability. (Id.)  The ALJ explicitly credits Dr. Whelan for "help[ing] to establish the limitations the claimant has mentally" and accepted those limitations when determining Plaintiff is limited to unskilled jobs, including jobs he performed in the past as a cashier and packager.

12

(A.R. at 18-19.)

Finally, Plaintiff's testimony that he is currently working part-time as a cashier and previously worked for three years as a sales clerk - - a job he left voluntarily - - supports the ALJ's determination that he is capable of performing unskilled work, consistent with the kind of work he did in the past. Accordingly, the ALJ's finding with regard to Plaintiff's residual functional capacity determination was supported by substantial evidence.

## IV. CONCLUSION

For the reasons stated, Plaintiff's motion for judgment on the pleadings is DENIED and the Commissioner's motion to affirm is ALLOWED.


DATED: September 7, 2011

/s/   Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge